**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 11 |
| Punto Ottico USA LLC, | ) |
| | ) Case No. 24-10660 (PB) |
| | ) |
| Debtor.[1] | ) |
| | ) |

### PLAN OF REORGANIZATION FOR DEBTOR, PUNTO OTTICO USA LLC, UNDER SUBCHAPTER V OF TITLE 11 OF THE UNITED STATES CODE

The above-captioned debtor and debtor in possession, hereby proposes the following plan of reorganization pursuant to the terms of the Bankruptcy Code.

## ARTICLE I – DEFINITIONS.

1.      **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in sections 503(b) or 507(a)(l) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtor's Estate and operating the Debtor's business, including wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under sections 330(a) or 331 of the Bankruptcy Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

2.      **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

3.      **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

4.      **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of section 501 of the Bankruptcy Code and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy 1111(a) of the Bankruptcy Code by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to section 521 of

---

[1] The last four digits of the Debtor's tax identification number are 8960.  The Debtor's mailing address is 66 White Street, Unit 501, New York, NY 10013.

the Bankruptcy Code and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order.  Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

5.    **Allowed Interest** means any and all Interest in the Debtor as to which no objection to the allowance thereof has been interposed with or any Final Order of the Bankruptcy Court has been entered so disallowing.

6.    **Allowed Priority Claim** means a Priority Claim pursuant to section 507 of the Bankruptcy Code, exclusive of section 507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

7.    **Allowed Priority Tax Claim** means a Priority Claim pursuant to section 507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

8.    **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

9.    **Assets** means each and every item of Property of the Estate and every interest of the Debtor and its Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtor, and includes without limitation: (a) all real and personal property and Cash; (b) all rights, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, including accounts receivable, contract rights, or other rights, including without limitation rights to payment, contribution or distribution from Insiders, whether due prior or subsequent to the Petition Date; (d) all of the Debtor's books, records, and privileges; and (e) all Executory Contracts, and other contracts, agreements, licenses, and leases.

10.    **Bankruptcy Case** and **Chapter 11 Case** means the Debtor's bankruptcy case that is pending before the United States Bankruptcy Court for the Southern District of New York, Manhattan Division, pursuant to Chapter 11 of the Bankruptcy Code, Case Numbers 24-10660-PB.

11.    **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., including any amendments thereto, in effect during the Bankruptcy Case.

12.    **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Southern District of New York, Manhattan Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or *certiorari* proceedings therefrom.

13.    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, section 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

14.    **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

15.    **Business Day** means every day except Saturdays, Sundays, federal holidays, and New York state holidays observed by the Bankruptcy Court.

16.    **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

17.    **Causes of Action** means any and all of the Estate's and the Debtor's actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to the right to recover transfers voidable or recoverable under sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtor, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtor not otherwise approved by the Bankruptcy Court; *provided*, *however*, that, when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court. A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan.

18.    **Claim** means, "claim" as such term is defined in section 101(5) of the Bankruptcy Code.

19.    **Class** means any Class into which Claims or Interests are classified pursuant to the Plan.

20.    **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to section 1129 of the Bankruptcy Code

21.    **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

22.    **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

23.    **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

24.    **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

25.    **Creditor(s)** means "creditor" as such term is defined in section 101(10) of the Bankruptcy Code.

26.    **Creditor Distribution Account** means the account established or maintained pursuant to the Plan for the payment and Distributions contemplated by the Plan.

27.    **Debtor** means, Punto Ottico USA LLC.

28.    **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

29.    **Disposable Income** means "disposable income" as such term is defined in section 1191(d) of the Bankruptcy Code.

30.    **Disputed Claim** means every Claim or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

31.    **Disputed Interest** shall mean an Interest in the Debtor which is not an Allowed Interest, which has not been disallowed by a Final Order or the Bankruptcy Court, and to which objection to the allowance thereof has been interposed.

32.    **Distribution** means a distribution to the Holders of Allowed Claims.

33.    **Effective Date** means the date upon which this Plan becomes effective and the Debtor starts making Distributions as set forth in Article VII.

34.    **Effective Date Distributable Cash** means the Cash of the Debtor on hand as of the Effective Date, less the amount of Cash actually necessary (i) to cure unexpired leases pursuant to the Plan and (ii) to fund operations of the Reorganized Debtor for three (3) months following the effective date.

35.    **Entity** means "entity" as such term is defined in section 101(15) of the Bankruptcy Code.

36.    **Estate** means the bankruptcy estate of the Debtor, created pursuant to section 541 of the Bankruptcy Code.

37.    **Executory Contract** means every unexpired lease to which the Debtor is a party, and every other contract that is subject to being assumed or rejected by the Debtor under section 365 of the Bankruptcy Code, pursuant to the Plan or pursuant to separate motion.

38.    **Final Decree** means the Bankruptcy Court's final decree pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Case after the Estate has been fully administered.

39.    **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or certiorari proceedings and as to which no appeal or *certiorari* proceeding is pending.

40.    **Holder** means the holder of a Claim or Interest, as applicable.

41.    **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of section 1124 of the Bankruptcy Code.

42.    **Insider** means "insider" as such term is defined in section 101(31) of the Bankruptcy Code.

43.    **Interest** means any and all equitable or legal interests in the Debtor by virtue of their membership in the Debtor.

44.    **Liquidation Analysis** means the Debtor's projections as to the recoveries of Holders of Claims and Interests in a hypothetical liquidation, attached hereto as **Exhibit B**, as may be amended, supplemented, or restated from time to time, and in the event of such amendment, supplementation, or restatement, as filed on the docket of the Bankruptcy Court.

45.    **Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

46.    **Order** shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

47.    **Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred in the ordinary course of business of the Debtor; *provided*, *however*, that any due and unpaid, post-petition payment in respect of rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

48.    **Payment** shall mean the Cash to be paid under the Plan to the Holders of Allowed Claims.

49.    **Person** means "person" as such term is defined in section 101(41) of the Bankruptcy Code.

50.    **Personal Property** means all tangible personal property of the Debtor subject to taxation under New York law.

51.    **Petition Date** means April 18, 2024, the date on which the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

52.    **Plan** means this Chapter 11 Plan of Reorganization, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

53.    **Plan Payment(s)** means any Payment made pursuant to the terms of the Plan.

54.    **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

55.    **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under section 507 of the Bankruptcy Code.

56.    **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

57.    **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of section 507 of the Bankruptcy Code.

58.    **Pro Rata** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

59.    **Professional** means: (i) any professional retained by the Debtor in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with section 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to section 1129(a)(4) of the Bankruptcy Code.

60.    **Professional Fee(s)** means the Administrative Claims for compensation and reimbursement submitted pursuant to section 328, 330, 331, or 503(b) of the Bankruptcy Code of Professionals (i) employed pursuant to an order of the Bankruptcy Court under sections 327 or 328 of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code or by other Final Order.

61.    **Projected Disposable Income** means the Debtor's projections of its Disposable Income, attached hereto as **Exhibit A**, as may be amended, supplemented, or restated from time to time, and in the event of such amendment, supplementation, or restatement, as filed on the docket of the Bankruptcy Court.

62.    **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

6

63.    **Property of the Estate** means "property of the estate" as such term is defined in section 541 of the Bankruptcy Code.

64.    **Related Party** means, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, employees, agents, trustees, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors.

65.    **Released Party** means collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) Ms. Stefania Passatutto; (d) the Subchapter V Trustee; (e) all Holders of Interests in the Debtor; and (f) each Related Party of each Entity in clauses (a) through (e).

66.    **Reorganized Debtor** means the Debtor upon the Effective Date of the Plan.

67.    **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code.

68.    **Security Interest** means "security interest" as such term is defined in section 101(51) of the Bankruptcy Code.

69.    **Subchapter V Trustee** means the subchapter V trustee appointed pursuant to section 1183 of the Bankruptcy Code, Nathaniel S. Wasserstein.

70.    **Unimpaired Class** means any Class the members of which are the Holders of Claims or Interests, which are not impaired within the meaning of section 1124 of the Bankruptcy Code.

71.    **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

72.    **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et seq*. and, as used in the Plan, means the office of the United States Trustee for Region 2 located in the Southern District of New York, Manhattan Division.

## <u>ARTICLE II – BACKGROUND</u>
## <u>AND CLASSIFICATION OF CLAIMS AND INTERESTS</u>

The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  On April 18, 2024, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, initiating its Chapter 11 Case.  The Debtor has elected to proceed under subchapter V of chapter 11.

The Debtor is an eyeglass retailer and vision services company that operates from two locations in New York—one in Manhattan and one in Brooklyn.  The Debtor is a part of the Punto Ottico Humaneyes project, a larger eyeglass project that seeks to be the meeting point of eyeglass design visionaries, vision care specialists, and, most importantly, the Company's customers.  As the Debtor's philosophy proudly explains: "The store is a space where we have the chance to welcome people and share our vision with them.  It is the space where our language evolves, where we improve our attitude towards what we know.  **Our customers wear our philosophy, and we are aware of it.**"

The Punto Ottico Huamneyes project was born in 2012 with the founding of Jacques Durand Occhiali S.R.L. ("JDO"), the Company's 100% owner, when French designer Jacques Durand and Italian designer Domenico Concato had a vision for an eyewear business that blended both ethics and aesthetics.  After a few years working together, the designers moved the project to Italy where they could not only better monitor the development of new projects with other designers, but also move toward realizing the production process—from design prototype to final product—internally.

The Debtor was formed in April 2021 and maintains the two Punto Ottico Humaneyes branded retail stores and showrooms in New York.  The Debtor's goal over the next five years is to bring its customers a single brand with each of their favorite products, all coming from an Italian production facility where Stefania Passatutto as Manager, collaborates daily to get high quality products to the stores in the U.S., where they ultimately find their way to the Debtor's lifeblood—the customer.

On February 27, 2023, the Debtor was sued by Mark Propco LLC (the "Judgment Creditor") for, *inter alia*, receipt of various allegedly fraudulent transfers alter ego, in the Supreme Court of the State of New York, County of New York, Index No. 651037/2023 (the "Default Action").  The lawsuit was premised on certain lease obligations allegedly owed to the Judgment Creditor by non-debtor entity PO USA Corporation.  The court in the Default Action ultimately denied the Debtor's cross-motion and granted the Judgment Creditor's motion for default judgment on January 31, 2024 (the "Default Judgment Order").  On March 11, 2024, the court entered default judgment against the Debtor in favor of the Judgment Creditor in the amount of $963,662.01 (the "Default Judgment").

Following the entry of the Default Judgment Order and Default Judgment, the Judgment Creditor began collection efforts against the Debtor, culminating in a restraining notice against the Debtor's bank account, freezing such account, and a levy upon the Debtor's inventory at the Manhattan and Brooklyn stores.  Unsurprisingly, these collection efforts came at the cost of the Debtor's operational stability and the Debtor soon thereafter began to struggle to meet its ongoing obligations.  Notwithstanding, the Default Judgment is an anomalous obligation and the Debtor immediately undertook efforts to negotiate with its key stakeholders (most notably, its landlords) and to retain insolvency professionals to restructure the Debtor's business and prepare this Plan of Reorganization that will inure to the benefit of all of the Debtor's stakeholders.

8

All Claims and Interests treated under Article IV of the Plan are divided into the following classes, which shall be mutually exclusive:

A.    Unsecured Claims.

1.    Class 1 – Allowed General Unsecured Claims.

Class 1 consists of all Allowed General Unsecured Claims.  Class 1 is Impaired.

B.    Equity Interests.

2.    Class 2 – Equity Interests in the Debtor.

Class 2 consists of all equity interests in the Debtor.  Class 2 is Unimpaired.

## ARTICLE III – ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS

A.    Administrative Expense Claims.

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Expense Claim shall be paid in full, paid monthly commencing on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court.  The Allowed Administrative Claims shall be paid first through pre-petition retainers (if any) and thereafter from Effective Date Distributable Cash and thereafter (only if necessary) from Projected Disposable Income.  It is anticipated that the Administrative Claims shall come from the Debtor's legal counsel, the Debtor's accountant (if one is retained), and the Subchapter V Trustee, only.  For the avoidance of doubt, the Debtor anticipates all Allowed Administrative Expense Claims shall be paid on the Effective Date from the Effective Date Distributable Cash.

B.      Priority Claims.

        1.      Allowed Priority Tax Claims.

Except to the extent that the Holder and the Debtor have agreed or may agree to a different treatment, in full satisfaction of each Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, payments equal to the Allowed Amount of such Claim.  Allowed Priority Tax Claims shall be paid in full on the Effective Date or such subsequent date that the Payments will commence on the later of the Effective Date or on such dates as a respective Priority Claim becomes Allowed.  The filed amount of Priority Tax Claims is currently $66.28.

        2.      Allowed Priority Claims.

Except to the extent that the Holder and the Debtor have agreed or may agree to different treatment, in full satisfaction of each Priority Claim, exclusive of Priority Tax Claims under 11 U.S.C. §507(a)(8), each Holder of an Allowed Priority Claim shall receive, payment of such Claim in full on the Effective Date or the date on which such Priority Claim becomes Allowed.  The Debtor does not anticipate any Allowed Priority Claims.

        3.      United States Trustee Fees.

If applicable, all fees required to be paid by 28 U.S.C. § l 930(a)(6) ("U.S. Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.  Any U.S. Trustee Fees owed on or before the Effective Date will be paid when due in the ordinary course.  The Debtor does not anticipate any United States Trustee Fees.

## <u>ARTICLE IV – TREATMENT OF IMPAIRED CLASSES</u>

A.    <u>Determination of Allowed Amounts</u>.

Treatment prescribed for Claims and Interests in the following sections of this Article IV shall in all events refer exclusively to the Allowed Amount of each respective Claim.  In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to determination of all such issues pursuant to Article VII, Section I, of this Plan, and other applicable law.

There are two (2) Classes of Claims and Interests.  Treatment for these classes is as follows:

1.    <u>Class 1 – Allowed General Unsecured Claims</u>.

Class 1 consists of all Allowed General Unsecured Claims against the Debtor.  In full satisfaction of their Allowed General Unsecured Claims, Holders of Allowed Class 1 Claims shall receive payment from the Creditor Distribution Account.  On the Effective Date, the Debtor shall establish or designate the Creditor Distribution Account, which shall comprise of the following assets: (i) the Effective Date Distributable Cash; and (ii) the Debtor's Projected Disposable Income, deposited each month after the close of each calendar month following the Effective Date.

Distribution from the Creditor Distribution Account shall be paid each month after the close of each calendar quarter following the Effective Date over a term of three (3) years commencing after the Effective Date.  Distributions shall be made *pro rata* to Allowed Class 1 Claimholders; *provided, however,* that no Distributions shall be made on account of Class 1 Allowed General Unsecured Claims until such time as all Allowed Administrative Expense Claims have been paid in full (which, for the avoidance of doubt, the Debtor anticipates shall occur on the Effective Date). The maximum Distribution to Class 1 Claimholders shall be equal to the total amount of Class 1 Claims, and no Class 1 Holder shall receive an amount greater than the amount of its Allowed Unsecured Claim.  Class 1 is Impaired.

2.     Class 2 – Equity Interests in the Debtor.

Class 2 consists of all equitable interests in the Debtor.  All Class 2 Interests shall be retained in the same proportion existing as of the Petition Date.  Class 2 is Unimpaired.

## ARTICLE V – UNEXPIRED LEASES AND EXECUTORY CONTRACTS

A.     Assumption or Rejection of Unexpired Leases and Executory Contracts.

To the extent the Debtor rejects any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim pursuant to Section 365 of the Code arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease.  Allowed Claims resulting from rejection shall be Class 1 General Unsecured Claims, except as otherwise provided herein.  The Debtor shall have until the completion of the hearing on Confirmation to assume or reject any unexpired lease or executory contract.  In the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, such unexpired lease or executory contract shall be deemed assumed as of the Confirmation Date.  The Debtor is not a

party to any executory contracts and is party to two (2) unexpired real property leases, one for each of its store locations. The amount necessary to cure the Debtor's leases is, in the aggregate, $43,319.60, with $33,044.60 being necessary to cure the lease with Premier 1086 Madison, LLC and $10,275.00 being necessary to cure the lease with Carmine Cincotta. The Debtor shall pay such cure amounts from Cash on hand on the Effective Date.

### ARTICLE VI – MEANS OF IMPLEMENTATION

A.    <u>Business Operations and Creditor Distribution Account</u>.

The Plan contemplates that the Debtor will continue to manage and operate its business in the ordinary course, but with restructured debt obligations. Please refer to the Projected Disposable Income for a projection of Debtor's anticipated financial performance during the term of the Plan. Additionally, on the Effective Date, the Debtor will establish and/or designate and fund the Creditor Distribution Account to fund payment to the Debtor's creditors.

B.    <u>Funds Generated During Chapter 11</u>.

Funds generated from operations through the Effective Date will be used for Plan Payments; the Debtor's cash on hand as of Confirmation will be available for payment as Effective Date Distributable Cash, as so defined. For a complete report detailing the funds generated from Debtor's operations through the Effective Date, please refer to the monthly operating and financial reports filed with the Bankruptcy Court in the Debtor's Bankruptcy Case.

C.    <u>Management, Control, and Operations of the Reorganized Debtor</u>.

The operations of the Reorganized Debtor will continue to be overseen by the Debtor's manager, Stefania Passatutto, and sole member, Jacques Durand Occhiali S.R.L.

D.    Procedures for Resolving Disputed Claims.

1.    Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtor or Reorganized Debtor, as the case may be, shall have the exclusive right to make and file objections to all Claims, other than those claims deemed as "Allowed" under the terms of the Plan.  All objections commenced prior to the Confirmation Date shall be prosecuted by the Reorganized Debtor.  Unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within ninety (90) days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the commencement of the Bankruptcy Case against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan.  Except as set forth in the Plan, upon Confirmation the Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

2.    Estimation of Claims.

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to section 502(c) of the

14

Bankruptcy Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

3.      Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claim objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest, as the case may be, for purposes related to allocations, distributions, and voting under the Plan.

4.      Payment and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Reorganized Debtor such that the Holder of such Allowed Claim receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question.  Except as otherwise provided in the Plan, no partial payments and no partial distributions

will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order.  Unless otherwise agreed to by the Reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order.

   5. <u>Allowance of Claims and Interests</u>.

    a. <u>Disallowance of Claims</u>.

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a Cause of Action under sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor.  The Debtor reserves and shall have the exclusive right and authority to bring any Causes of Action before and after the Effective Date.

    b. <u>Allowance of Claims</u>.

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Case, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim or Equity Interest

   6. <u>Controversy Concerning Impairment</u>.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing,

shall determine such controversy before the Confirmation Date.  If such controversy is not resolved

prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

### ARTICLE VII – SETTLEMENT, RELEASE, INJUNCTION, AND RELATED

A.    Compromise and Settlement of Claims, Interests, Causes of Action, and Controversies.

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in

consideration for the distributions and other benefits provided pursuant to the Plan, the provisions

of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests,

pending Causes of Action, and controversies released, settled, compromised, discharged, or

otherwise resolved pursuant to the Plan, relating to the contractual, legal, and subordination rights

that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or

any distribution to be made on account of such Allowed Claim or Interest.  The entry of the

Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or

settlement of all such Claims, Interests, Causes of Action, and controversies, as well as a finding

by the Bankruptcy Court that such compromise or settlement, is in the best interests of the Debtor,

its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.

In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without

any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date,

the Reorganized Debtor may compromise and settle Claims against, and Interests in, the Debtor

and its Estate and Causes of Action against other entities.  The Plan shall incorporate all settlements

previously approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

B.    Discharge of Claims.

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically

provided in the Plan or in any contract, instrument, or other agreement or document created

pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan or voted to reject the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan.

C.    Release of Liens.

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate and, subject to the consummation of the applicable distributions contemplated in the Plan, shall be fully released and discharged, at the sole cost of and expense of the Reorganized Debtor, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such

documents as may be reasonably requested by the Debtor or the Reorganized Debtor, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns. The Debtor is not aware of any such mortgages, deeds of trust, Liens, pledges, or other security interests that exist as of the date hereof.

**D.    Debtor Release.**

**Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed released and discharged by each and all of the Debtor, the Reorganized Debtor, and its Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtor, that the Debtor, the Reorganized Debtor, or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtor's in- or out-of-court restructuring efforts, the Chapter 11 Case, the formulation, preparation, dissemination,**

negotiation, entry into, or filing of, as applicable, the Plan, any Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or the Plan Supplement, the commencement of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not (a) release any post-Effective Date obligations of any party or Entity under the Plan, or any document, instrument, or agreement (including those set forth in any Plan Supplement) executed to implement the Plan or any post-Effective Date obligation arising under any reinstated agreement, (b) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (c) release any Claims or Causes of Action against any non-Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases herein, which includes by reference each of the related provisions and definitions contained herein, and shall constitute the Bankruptcy Court's finding that the releases herein are: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by the releases herein; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtor and after notice and opportunity for hearing; and (f) a bar to any of the Debtor asserting any claim released by the releases herein against any of the Released Parties.

E.    Injunction.

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in

the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation

Order, all Entities that have held, hold, or may hold claims or interests that have been released,

discharged, or are subject to exculpation under the Plan are permanently enjoined, from and after

the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the

Reorganized Debtor, or the Released Parties: (a) commencing or continuing in any manner any

action or other proceeding of any kind on account of or in connection with or with respect to any

such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means

any judgment, award, decree, or order against such Entities on account of or in connection with or

with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance

of any kind against such Entities or the property or the estates of such Entities on account of or in

connection with or with respect to any such claims or interests; (d) asserting any right of setoff,

subrogation, or recoupment of any kind against any obligation due from such Entities or against

the property of such Entities on account of or in connection with or with respect to any such claims

or interests unless such Holder has filed a motion requesting the right to perform such setoff on or

before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise

that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law

or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of

any kind on account of or in connection with or with respect to any such claims or interests released

or settled pursuant to the Plan.

       F.     <u>Protection Against Discriminatory Treatment</u>.

       In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2

of Article VI of the United States Constitution, no Governmental Unit shall discriminate against

the Reorganized Debtor, or the Entity with which a Reorganized Debtor has been or is associated,

or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor has been associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

       G.     <u>Recoupment</u>.

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before Confirmation, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

       H.     <u>Reimbursement or Contribution</u>.

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## <u>ARTICLE VIII – MISCELLANEOUS</u>

A.    <u>Business Operations and Creditor Distribution Account</u>.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court.  The Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan.

B.    <u>Post-Confirmation Status Report</u>.

Pursuant to the Plan, within ninety (90) days of the entry of the Confirmation Order, the Debtor will file a status report with the Bankruptcy Court attaching a detailed accounting of all payments made under the Plan and explaining what progress has been made toward consummation of the confirmed Plan.  The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation.  The Bankruptcy Court may schedule subsequent status conferences in its discretion.

C.    <u>Preservation, Prosecution, and Defense of Causes of Action</u>.

Except as set forth herein, upon Confirmation, the Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, including all pending adversary proceedings, whether or not such causes of action have been commenced as of the Effective Date, and shall be substituted as the real party-in-interest in any such actions commenced by or against the Debtor or Bankruptcy Estate.  The Reorganized Debtor shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Reorganized Debtor and collection; *provided*, *however*, that the Reorganized Debtor shall be authorized at any point in any litigation (a) to enter into such settlements as the Reorganized

Debtor deems to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Reorganized Debtor deems such action to be in the best interest of creditors without Bankruptcy Court or other approval.  The Debtor does not believe there are any Causes of Action to pursue.

D.    Retention of Professionals.

The Reorganized Debtor may retain professionals on such terms as it deems reasonable without Bankruptcy Court approval.

E.    Conditions to Effectiveness.

The Effective Date shall occur upon the conditions set forth in this Plan.  However, the Effective Date shall not occur until the entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtor and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided*, *however*, that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtor may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.  The Effective Date shall automatically occur without further order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein have been met.

F.    Police Powers.

Nothing in this Article VII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event

occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to section 1141 of the Bankruptcy Code.

      G.    <u>Revocation and Withdrawal of the Plan</u>.

The Debtor reserves the right to withdraw this Plan at any time before entry of the Confirmation Order.  If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

      H.    <u>Modification of the Plan</u>.

The Debtor may seek to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

      I.    <u>Retention of Jurisdiction</u>.

After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it herein without approval of the Bankruptcy Court, except as specifically set forth herein.  The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court.  Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as

the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

1.      All objections to the allowance of Claims and Interests and the compromise of Claims;

2.      All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Bankruptcy Case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided*, *however*, that fees of professionals for services rendered after the Effective Date may be paid by the Debtor or the Reorganized Debtor, as applicable, in the ordinary course of business without a Bankruptcy Court order; *provided further*, *however*, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.      Any Causes of Action brought by the Debtor or Reorganized Debtor, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code;

4.      All controversies and disputes arising under or in connection with the Plan;

5.      The enforcement and interpretation of the provisions of the Plan;

6.      To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with section 1127 of the Bankruptcy Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Bankruptcy Code or the

Plan;

10.     To protect the Property of the Estate from adverse claims or interference

inconsistent with the Plan; and

11.     To ensure that Distributions are accomplished as provided herein and to

resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law

or under a contract or agreement.

J.      <u>Headings</u>.

Article, Section, and Paragraph headings used herein are for convenience only and shall

not affect the interpretation or construction of any provision of this Plan.

K.      <u>Confirmation Without Acceptance by all Impaired Classes; "Cramdown"</u>.

The Debtor reserves all rights to confirm the Plan using the cramdown procedures set forth

under 11 U.S.C. §§ 1129(b) and 1191.

L.      <u>Notices</u>.

All notices required or permitted to be made in accordance with the Plan shall be in writing

and shall be delivered personally or by facsimile transmission or mailed by United States Mail to

the following:

> <u>Counsel for the Debtor and the Reorganized Debtor:</u>
>
> Pack Law
> 51 Northeast 24th Street, Suite 108
> Miami, Florida 33137
> Telephone: (305) 916-4500
>
> <u>The Debtor and the Reorganized Debtor:</u>
>
> Punto Ottico USA, LLC
> Attn: Stefania Passatutto, Manager
> 66 White Street, Unit 501
> New York, New York 10013

The United States Trustee:

Office of United States Trustee
Attn: Mark Bruh
Alexander Hamilton Custom House
One Bowling Green, Suite 534
New York, New York 10004-1408
Telephone: (212) 510-0500

The Subchapter V Trustee:

Nathaniel S. Wasserstein, Esq.
C/o Lindenwood Associates, LLC
328 North Broadway, 2nd Floor
Upper Nyack, New York 10960
Telephone: (845) 398-9825

M.    Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Reorganized Debtor in making Distributions shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an

undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

      N.     <u>Transmittal of Distributions to Parties Entitled Thereto</u>.

      The Debtor shall make all payments and Distributions required under the terms of this Plan. All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

      O.     <u>Distribution of Unclaimed Property</u>.

      Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Class 2 Claims in accordance with the provisions of this Plan. Requests for re-issuance of any such check shall be made in writing to the Reorganized Debtor by the Holder of the Claim with respect to the check originally issued.

P.    <u>Transfer Taxes</u>.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery, or recording of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by, or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

Q.    <u>Default and Remedies of Allowed Claimholders</u>.

In the event any Allowed Claimholder is not timely paid in accordance with the Plan, such Allowed Claimholder shall provide the Debtor and the Subchapter V Trustee with written notice of said payment default (the "<u>Default</u>").  The Debtor shall have ten (10) days from receipt of the Default notice to cure the Default.  If the Debtor fails to timely cure the Default, the Allowed Claimholder may seek relief from the Bankruptcy Court to enforce this Plan or such further relief that may be available to such Allowed Claimholder under Federal or applicable state law.

## CONCLUSION

The Debtor believes that the Plan is the best possible outcome for all parties in interest and would encourage the same who are entitled to do so to vote in favor of Confirmation of the Plan. The Debtor believes, as demonstrated by the Liquidation Analysis, that in the event the Plan were not confirmed and that the Debtor were required to liquidate in a chapter 7 liquidation, parties in interest would be adversely affected and recoveries would be dramatically reduced when compared to reorganization under this Plan.

Dated:   July 18, 2024

Respectfully submitted,

**PACK LAW**
*Counsel to the Debtor and*
*Debtor-in-Possession*
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Telephone: (305) 916-4500

By:   _/s/ Jessey J. Krehl_____
        Joseph A. Pack
        Email:  joe@packlaw.com
        New York Bar No. 4790432

        Jessey J. Krehl (admitted *pro hac vice*)
        Email:  jessey@packlaw.com
        Florida Bar No. 1025848

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July 2024, a true and correct copy of the foregoing was furnished via this Court's CM/ECF system to all parties registered to receive electronic service thereby.

By:   _/s/ Jessey J. Krehl_____
        Jessey J. Krehl, Esq.
        Email:  jessey@packlaw.com
        Florida Bar No. 1025848

## Exhibit A
## Projected Disposable Income

The following pages contain the cash flow projections and projected disposable income for the Debtor over the course of the Plan (the "Projections"). These Projections are based on several basic assumptions, including but not limited to those articulated below:

- *Forward-looking statements, generally.* The Debtor's Projections include and are based on various estimates and assumption. Such forward-looking statements are subject to inherent uncertainties and to a wide variety of significant business, economic, and competitive risks, including those summarized herein. The words "anticipate," "believe," "estimate," "will," "may," "intend," and "expect" and similar expressions generally identify forward-looking statements. Although the Debtor believes that its plans, intentions, and expectations reflected in the forward-looking statements are reasonable, the Debtor cannot be sure that they will be achieved. These statements are only predictions and are not guarantees of future performance or results. Forward-looking statements are subject to risks and uncertainties that could cause actual results to differ materially from those contemplated by a forward-looking statement. All forward-looking statements attributable to the Debtor or those acting on its behalf are expressly qualified in their entirety by the cautionary statements set forth herein. Except as required by law, the Debtor expressly disclaims any obligation to update any forward-looking statement, whether as a result of new information, future events, or otherwise.

- *The Projections assume a three-year Plan term.* The Projections are separated out by calendar year (i.e., January through December). Accordingly, the Debtor's actual projected disposable income available to fund Plan payments will depend on the month in which the Plan is confirmed by the Bankruptcy Court. Nevertheless, the Debtor believes that projected disposable income from month-to-month within any given year will be relatively consistent, and the Effective Date Distributable Cash under the Plan includes Cash generated in the current year (2024), as set forth in the Projections. The greater disposable income for the year of 2024 reflects the fact that the Debtor's owner, JDO, paid key expenses of the Debtor on behalf of the Debtor during the Chapter 11 Case.

- *The Projections assume continued operations at its two locations with an expanded work force.* It is the Debtor's intention to increase its operational capacity, expanding its workforce and developing its business consistent with its prepetition business plan to ensure the Debtor can meet its obligations under the Plan. The Debtor believes this increased capacity, working from its existing two locations, will insure to its benefit and develop the Debtor's business to fund its obligations under the Plan.

- *The Projections assume that employee and contract labor expenses will remain relatively consistent.* As demonstrated by the Debtor's financial statements and based on the Debtor's experience, the Debtor prioritizes a healthy work environment and competitive industry compensation and benefits to maintain a dedicated work force. The Debtor anticipates it will be able to continue its existing prepetition practice with its present and future employees and contractors, resulting in consistent labor expenses throughout the plan term.

| Item | CY (2024) | Y1 (2025) | Y2 (2026) | Y3 (2027) |
|---|---|---|---|---|
| **Utilities** | | | | |
| Electricity | $7,600.00 | $8,200.00 | $8,200.00 | $8,400.00 |
| Gas | $800.00 | $900.00 | $900.00 | $1,000.00 |
| Telecommunications | $1,900.00 | $2,000.00 | $2,000.00 | $2,000.00 |
| Waste Collection | $2,400.00 | $2,500.00 | $2,600.00 | $2,700.00 |
| **Total Utilities** | **$12,700.00** | **$13,600.00** | **$13,700.00** | **$14,100.00** |
| | | | | |
| **Operating Expenses** | | | | |
| Payroll and Labor | $180,000.00 | $360,000.00 | $360,000.00 | $360,000.00 |
| Shipping and Postage | $9,000.00 | $9,500.00 | $10,100.00 | $10,750.00 |
| Expenses for Professionals | $30,000.00 | $24,000.00 | $24,000.00 | $24,000.00 |
| Rent Expenses | $269,000.00 | $277,000.00 | $277,000.00 | $277,000.00 |
| Interest | $6,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| **Total Operating Expenses** | **$494,000.00** | **$671,500.00** | **$672,100.00** | **$672,750.00** |
| | | | | |
| **Insurance** | **$14,000.00** | **$14,200.00** | **$14,500.00** | **$14,800.00** |
| **Medical insurance** | **$12,000.00** | **$15,000.00** | **$30,000.00** | **$30,000.00** |
| | | | | |
| **Taxes NY** | **$1,000.00** | **$1,000.00** | **$1,000.00** | **$1,000.00** |
| | | | | |
| **Supplier Costs** | **$180,000.00** | **$190,000.00** | **$202,000.00** | **$215,000.00** |
| **Merchant Fees** | **$31,150.00** | **$32,700.00** | **$34,650.00** | **$37,100.00** |
| | | | | |
| **Total Expenses** | **$744,850.00** | **$938,000.00** | **$967,950.00** | **$984,750.00** |
| | | | | |
| **Total Receipts** | **$890,000.00** | **$934,500.00** | **$990,000.00** | **$1,060,000.00** |
| | | | | |
| | | | | |
| **Projected Disposable Income** | **$145,150.00** | **-$3,500.00** | **$22,050.00** | **$75,250.00** |

**Exhibit B**
**Liquidation Analysis**

| ASSETS | Estimated Liquidation Value as of the Date Hereof |
|---|---|
| Cash | $150,000.00 |
| Inventory | $14,100.86 - $21,151.28[1] |
| Machinery, Furniture, and Equipment | $7,809.05 |
| Deposits and Credits | $0.00[2] |
| Real Property | $0.00 |
| **TOTAL LIQUIDATION VALUE** | $171,909.91 - $178,960.33 |
| **DEBT (OTHER THAN GENERAL UNSECURED DEBT)** | |
| Secured Debt | $0.00 |
| Administrative: Chapter 7 | $20,000.00 |
| Administrative Chapter 11 (including Subchapter V Trustee) | $70,000.00[3] |
| Priority and Secured Tax Claims | $66.28 |
| **TOTAL DEBTS PAID BEFORE GUC CLAIMS** | **$90,066.28** |
| **AVAILABLE CASH FOR UNSECURED CREDITORS** | **$95,105.63 - $102,156.05** |

---

[1] Assumes forced liquidation value between 10% and 15%.

[2] Of the Debtor's approximately $822.00 in deposits and credits held by its utility providers, the Debtor estimates approximately $0.00 would be available for distribution in a hypothetical liquidation in light of the claims owed thereto and the relative burden in realizing such little benefit.

[3] Counsel to the Debtor has $13,262.00 remaining in its prepetition pre-payment retainer. The below "available cash for unsecured creditors" assumes the remaining portion of the pre-payment retainer will be applied to administrative expense claims of Debtor's counsel.